any right to terminate this Agreement or the rights of the Team under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

In the event (i) the Arena Manager obtains a final, non-appealable award or judgment for compensatory damages against the Team, and the Team fails to pay such judgment within ninety (90) days after the issuance of such award or entry of such judgment, or (ii) the Arena Manager obtains a final, non-appealable award or order requiring specific performance by the Team of the Team's obligations under this Agreement, and the Team fails to so perform within ninety (90) days after the date on which the Team's performance is required by such award or order, then the Arena Manager, in addition to its other remedies, shall have the right to resign as Arena Manager under this Agreement upon at least ninety (90) days' notice to the other parties hereto.

14.3.2 <u>For City Event of Default</u>. Following an Event of Default by the City, the Arena Manager shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the City. In addition, the Arena Manager shall have the right to seek an award and/or order requiring specific performance by the City of the City's obligations under this Agreement. The Arena Manager hereby waives, with respect to any Event of Default by the City, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the City under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

In the event (i) the Arena Manager obtains a final, non-appealable award or judgment for compensatory damages against the City, and the City fails to pay such judgment within ninety (90) days after the issuance of such award or entry of such judgment, or (ii) the Arena Manager obtains a final, non-appealable award or order requiring specific performance by the City of the City's obligations under this Agreement, and the City fails to so perform within ninety (90) days after the date on which the City's performance is required by such award or order, then the Arena Manager, in addition to its other remedies, shall have the right to resign as Arena Manager under this Agreement upon at least ninety (90) days' notice to the other parties hereto.

14.3.3 <u>For Retail/Residential Developer Event of Default</u>. Following an Event of Default by the Retail/Residential Developer, the Arena Manager shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Retail/Residential Developer. In addition, the Arena Manager shall have the right to seek an award and/or order requiring specific performance by the Retail/Residential Developer of the Retail/Residential Developer's obligations under this Agreement. The Arena Manager hereby waives, with respect to any Event of Default by the Retail/Residential Developer, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Retail/Residential Developer under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

In the event (i) the Arena Manager obtains a final, non-appealable award or judgment for compensatory damages against the Retail/Residential Developer, and the Retail/Residential Developer fails to pay such judgment within ninety (90) days after the issuance of such award or entry of such judgment, or (ii) the Arena Manager obtains a final, non-appealable award or order

requiring specific performance by the Retail/Residential Developer of the Retail/Residential Developer's obligations under this Agreement, and the Retail/Residential Developer fails to so perform within ninety (90) days after the date on which the Retail/Residential Developer's performance is required by such award or order, then the Arena Manager, in addition to its other remedies, shall have the right to resign as Arena Manager under this Agreement upon at least ninety (90) days' notice to the other parties hereto.

14.3.4 <u>For Entertainment Developer Event of Default</u>. Following an Event of Default by the Entertainment Developer, the Arena Manager shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Entertainment Developer. In addition, the Arena Manager shall have the right to seek an award and/or order requiring specific performance by the Entertainment Developer of the Entertainment Developer's obligations under this Agreement. The Arena Manager hereby waives, with respect to any Event of Default by the Entertainment Developer, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Entertainment Developer under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

In the event (i) the Arena Manager obtains a final, non-appealable award or judgment for compensatory damages against the Entertainment Developer, and the Entertainment Developer fails to pay such judgment within ninety (90) days after the issuance of such award or entry of such judgment, or (ii) the Arena Manager obtains a final, non-appealable award or order requiring specific performance by the Entertainment Developer of the Entertainment Developer's obligations under this Agreement, and the Entertainment Developer fails to so perform within ninety (90) days after the date on which the Entertainment Developer's performance is required by such award or order, then the Arena Manager, in addition to its other remedies, shall have the right to resign as Arena Manager under this Agreement upon at least ninety (90) days' notice to the other parties hereto.

14.4 <u>City Remedies</u>.

14.4.1 <u>For Team Event of Default</u>. Subject to the limitation on the City's remedies set forth in Section 14.7 with respect to any Team Use Covenant Default, following an Event of Default by the Team, the City shall have the right to seek compensatory (and, under Section 14.7, liquidated), but not consequential or punitive, damages arising out of such Event of Default by the Team. In addition, the City shall have the right to seek an award and/or order requiring specific performance by the Team of the Team's obligations under this Agreement. Except to the extent otherwise provided in Section 14.7 with respect to the liquidated damages described therein, the City hereby waives, with respect to any Event of Default by the Team, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Team under this Agreement, other than as stated in the immediately following paragraph, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

In the event (i) the City obtains a final, non-appealable award or judgment for compensatory damages (including liquidated damages pursuant to Section 14.7) against the Team, and the Team fails to pay such judgment within ninety (90) days after the issuance of such award or

entry of such judgment, or (ii) the City obtains a final, non-appealable award or order requiring specific performance by the Team of the Team's obligations under this Agreement, and the Team fails to so perform within ninety (90) days after the date on which the Team's performance is required by such award or order, then the City shall have the right, in addition to any other rights and remedies of the City, to terminate the Team's rights under this Agreement upon at least ninety (90) days' notice to the other parties hereto.

14.4.2 <u>For Arena Manager Event of Default</u>. Following an Event of Default by the Arena Manager, the City shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Arena Manager. In addition, the City shall have the right to seek an award and/or order requiring specific performance by the Arena Manager of the Arena Manager's obligations under this Agreement. Subject to Section 14.11.1, the City hereby waives, with respect to any Event of Default by the Arena Manager, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Arena Manager under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.4.3 <u>For Retail/Residential Developer Event of Default</u>. Following an Event of Default by the Retail/Residential Developer, the City shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Retail/Residential Developer. In addition, the City shall have the right to seek an award and/or order requiring specific performance by the Retail/Residential Developer of the Retail/Residential Developer's obligations under this Agreement. The City hereby waives, with respect to any Event of Default by the Retail/Residential Developer, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Retail/Residential Developer under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.4.4 <u>For Entertainment Developer Event of Default</u>. Following an Event of Default by the Entertainment Developer, the City shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Entertainment Developer. In addition, the City shall have the right to seek an award and/or order requiring specific performance by the Entertainment Developer of the Entertainment Developer's obligations under this Agreement. The City hereby waives, with respect to any Event of Default by the Entertainment Developer, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Entertainment Developer under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.5 <u>Retail/Residential Developer Remedies</u>.

14.5.1 <u>For Team Event of Default</u>. Following an Event of Default by the Team other than a Team Use Covenant Default (for which the Retail/Residential Developer shall have no remedy), the Retail/Residential Developer shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Team. In addition, the Retail/Residential Developer shall have the right to seek an award and/or order requiring specific performance by the Team of the Team's obligations under this Agreement.

The Retail/Residential Developer hereby waives, with respect to any Event of Default by the Team, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Team under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.5.2 <u>For City Event of Default</u>. Following an Event of Default by the City, the Retail/Residential Developer shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the City. In addition, the Retail/Residential Developer shall have the right to seek an award and/or order requiring specific performance by the City of the City's obligations under this Agreement. The Retail/Residential Developer hereby waives, with respect to any Event of Default by the City, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the City under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.5.3 <u>For Arena Manager Event of Default</u>. Following an Event of Default by the Arena Manager, the Retail/Residential Developer shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Arena Manager. In addition, the Retail/Residential Developer shall have the right to seek an award and/or order requiring specific performance by the Arena Manager of the Arena Manager's obligations under this Agreement. The Retail/Residential Developer hereby waives, with respect to any Event of Default by the Arena Manager, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Arena Manager under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.6 <u>Entertainment Developer Remedies</u>.

14.6.1 <u>For Team Event of Default</u>. Following an Event of Default by the Team other than a Team Use Covenant Default (for which the Entertainment Developer shall have no remedy), the Entertainment Developer shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Team. In addition, the Entertainment Developer shall have the right to seek an award and/or order requiring specific performance by the Team of the Team's obligations under this Agreement. The Entertainment Developer hereby waives, with respect to any Event of Default by the Team, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Team under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.6.2 <u>For City Event of Default</u>. Following an Event of Default by the City, the Entertainment Developer shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the City. In addition, the Entertainment Developer shall have the right to seek an award and/or order requiring specific performance by the City of the City's obligations under this Agreement. The Entertainment Developer hereby waives, with respect to any Event of Default by the City, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the

City under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.6.3 <u>For Arena Manager Event of Default</u>. Following an Event of Default by the Arena Manager, the Entertainment Developer shall have the right to seek compensatory, but not consequential or punitive, damages arising out of such Event of Default by the Arena Manager. In addition, the Entertainment Developer shall have the right to seek an award and/or order requiring specific performance by the Arena Manager of the Arena Manager's obligations under this Agreement. The Entertainment Developer hereby waives, with respect to any Event of Default by the Arena Manager, any claim or right to consequential or punitive damages and any right to terminate this Agreement or the rights of the Arena Manager under this Agreement, and acknowledges that the other parties hereto are relying on such waiver in entering into this Agreement.

14.7 <u>Specific Performance and Liquidated Damages for Team Use Covenant Default</u>. The parties hereto agree that the provisions of this Section 14.7 shall prevail over any provision of this Agreement that may be inconsistent with this Section 14.7 with respect to any Team Use Covenant Default and that the remedies described in this Section 14.7 shall be the City's sole and exclusive remedies with respect to any Team Use Covenant Default.

14.7.1 <u>Specific Performance</u>. The City and the Team acknowledge that (i) the Home Games to be played by the Team at the Arena Facility pursuant to Section 9.5 will be unique, (ii) the aggregate damages that the City will suffer following a Team Use Covenant Default are incapable of estimation due, to a substantial extent, to the adverse consequences a Team Use Covenant Default will have on development of properties in the vicinity of the Arena, and (iii) an award of damages arising from a Team Use Covenant Default, including liquidated damages as contemplated by Section 14.7.2, will not be an adequate remedy. Accordingly, the Team agrees that the City shall be entitled to specific performance of, or other appropriate injunctive relief enforcing, the obligations of the Team under Section 9.5. Notwithstanding any other provision of this Agreement, no cure period provided for in this Agreement shall be a condition to the City's right to seek such specific performance or other injunctive relief.

14.7.2 <u>Termination; Liquidated Damages</u>. The City and the Team acknowledge that (i) the liquidated damages remedy provided by this Section 14.7.2 is to be available only in the event that the remedies provided by Section 14.7.1 are not available to the City, and (ii) if the City seeks but fails to obtain the remedies provided by Section 14.7.1 following a Team Use Covenant Default, the aggregate damages arising from such Team Use Covenant Default will be incapable of estimation for the reasons described in Section 14.7.1. The Team and the City agree that the liquidated damages described in this Section 14.7.2 are a reasonable estimate of the damages that the City will incur as a result of a Team Use Covenant Default, and such liquidated damages are not intended, and shall not be deemed, to be a penalty. The City and the Team further agree that the intent and the objective of this Section 14.7.2 are to attempt to compensate the City for its loss (which the City and the Team acknowledge cannot be fully compensated for by the payment of damages, including liquidated damages) that will result from a Team Use Covenant Default.

To accomplish such objective, the City and the Team have, as of the Agreement Effective Date, agreed that the formula set forth in this Section 14.7.2 constitutes the best, reasonable and objective estimate of the damages that the City will incur following a Team Use Covenant Default in the event the City seeks but fails to obtain the remedies provided by Section 14.7.1.

If the City seeks but fails to obtain the remedies provided by Section 14.7.1 following a Team Use Covenant Default, the City shall have the right to terminate the Team's rights and obligations under this Agreement by notice of such termination given to the other parties hereto within thirty (30) days after the issuance of the final, non-appealable award or judgment determining that the City is not entitled to the remedies provided by Section 14.7.1.

Following such termination, the Team shall pay to the City, within ninety (90) days after the end of each Fiscal Year, commencing with the Fiscal Year during which such Team Use Covenant Default occurred and continuing for each Fiscal Year thereafter until the Agreement Termination Date (not including any First Renewal Term, any Second Renewal Term or any Third Renewal Term), the Liquidated Damages Amount, calculated in accordance with the following formula, less the applicable Liquidated Damages Credit:

(a) First, the aggregate amount of all revenues actually received by the City from all of the revenue sources listed on or contemplated by Exhibit "A" from or with respect to the Project as of the date of the Team Use Covenant Default shall be subtracted from $794,663,034; and

(b) Second, the result of the subtraction described in the immediately preceding clause (a) shall be divided by the number of Fiscal Years (rounded to the nearest Fiscal Year) remaining in the Agreement Term (not including any First Renewal Term, any Second Renewal Term or any Third Renewal Term) as of the date of the Team Use Covenant Default.

The result of the division described in clause (b) shall be the "**Liquidated Damages Amount**".

The Team shall be entitled to a credit against the Liquidated Damages Amount payable with respect to a given Fiscal Year in an aggregate amount (the "**Liquidated Damages Credit**") of all revenues actually received by the City during such Fiscal Year from all of the revenue sources on or contemplated by Exhibit "A" from or with respect to the Project.

14.8    Rights and Remedies are Cumulative. Except with respect to rights and remedies expressly declared to be exclusive in this Agreement (including the exclusive remedies provided to the City in Section 14.7 for any Team Use Covenant Default) and subject to the limitations set forth in Section 14.2, Section 14.3, Section 14.4, Section 14.5 and Section 14.6, including the waivers of consequential and punitive damages and the waivers of termination rights set forth therein, the rights and remedies of the parties hereto are cumulative and the exercise by any party of one or more of such rights or remedies shall not preclude the exercise by it, at the same or different times, of any other rights or remedies for the same Event of Default or any other Event of Default.

14.9    Costs, Expenses and Fees. In the event of any litigation, arbitration or other dispute resolution proceeding (including Arbitration proceedings required by Article 16) in

connection with this Agreement, involving a claim by any party hereto against any other party hereto (a "**Proceeding**"), (i) no party shall be entitled to advances from or to be reimbursed from Operating Revenues for any costs or expenses incurred by it in such Proceeding, including reasonable attorneys' fees or costs; (ii) no such costs and expenses shall be treated as Operating Expenses; (iii) the prevailing party in such Proceeding shall be entitled to be reimbursed (but not from Operating Revenues) for all costs and expenses incurred in such Proceeding, including reasonable attorneys' fees and costs as may be fixed by the court or the Arbitrator, in such manner and from such parties as may be directed by such court or Arbitrator; and (iv) any award granted to a party in such Proceeding shall be treated as the sole property of such party.

14.10   Acceptance of Legal Process.

14.10.1      Service on the Arena Manager.  In the event any legal or equitable action is commenced against the Arena Manager by any other party hereto, service of process on the Arena Manager shall be made by personal service upon the President of the Arena Manager, or in such other manner as may be authorized by law.

14.10.2      Service on the Team.  In the event any legal or equitable action is commenced against the Team by any other party hereto, service of process on the Team shall be made by personal service upon the Chairman or Chief Executive Officer of the Team, or in such other manner as may be authorized by law.

14.10.3      Service on City.  In the event that any legal or equitable action is commenced against the City by any other party hereto, service of process on the City shall be made by personal service upon the City Clerk of the City of Glendale, Arizona, or in such other manner as may be authorized by law.

14.10.4      Service on the Retail/Residential Developer.  In the event any legal or equitable action is commenced against the Retail/Residential Developer by any other party hereto, service of process on the Retail/Residential Developer shall be made by personal service upon the President of the Retail/Residential Developer, or in such other manner as may be authorized by law.

14.10.5      Service on the Entertainment Developer.  In the event any legal or equitable action is commenced against the Entertainment Developer by any other party hereto, service of process on the Entertainment Developer shall be made by personal service upon the President of the Entertainment Developer, or in such other manner as may be authorized by law.

14.11   Replacement Arena Manager.  The following provisions shall govern replacement of the Arena Manager:

14.11.1      Designation of Replacement Arena Manager.  In the event that:

(a)      the Arena Manager resigns;

(b)      the Arena Manager is dissolved;

(c)     the Arena Manager commences, or has commenced against it, any case, proceeding or other action under the United States Bankruptcy Code, or any other Applicable Law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking (i) to have an order for relief entered with respect to the Arena Manager; (ii) to adjudicate the Arena Manager bankrupt or insolvent or seeking reorganization, winding up, liquidation, dissolution, discharge, composition, or other relief with respect to the Arena Manager or the debts of the Arena Manager; or (iii) the appointment of a receiver, trustee, custodian, or similar official for the Arena Manager; or

(d)     the Arena Manager becomes insolvent or admits in writing its inability to pay its debts as they mature;

then this Agreement shall remain in effect in accordance with its terms and subject to Applicable Law, and the Team, the Retail/Residential Developer, the Entertainment Developer and the City shall mutually agree on a replacement Arena Manager (the "**Replacement Arena Manager**") to assume the obligations of the Arena Manager under this Agreement. The City, the Replacement Arena Manager, the Team, the Retail/Residential Developer and the Entertainment Developer shall thereafter be bound by the terms, conditions and agreements set forth herein, with the same force and effect as if the Replacement Arena Manager were the original Arena Manager hereunder. If the Team, the Retail/Residential Developer, the Entertainment Developer and the City are unable to agree on a Replacement Arena Manager within fifteen (15) days after an event described in clauses (a) through (d) above occurs, such dispute shall be resolved by Arbitration pursuant to Article 16.

14.11.2 Arena Manager's Duties Upon Designation of a Replacement Arena Manager. Upon designation of a Replacement Arena Manager pursuant to this Agreement (and following any termination of this Agreement pursuant to the provisions of this Agreement), the Arena Manager shall:

(a)     Deliver to the City, the Team, the Retail/Residential Developer, the Entertainment Developer and the Replacement Arena Manager, immediately after the Arena Manager's receipt of notice of the designation of the Replacement Arena Manager (or such termination), a final accounting reflecting the balance of income and expenses as of the effective date of such designation (or such termination);

(b)     Deliver to the Replacement Arena Manager, immediately after the Arena Manager's receipt of notice of such designation (or such termination), all monies in Arena Accounts or otherwise held by the Arena Manager on behalf of the Team, the Retail/Residential Developer, the Entertainment Developer or the City, together with an accounting therefor;

(c)     Deliver to the Replacement Arena Manager, immediately after the Arena Manager's receipt of notice of such designation (or such termination), all keys, security codes, books and records of account, agreements and contracts, Licenses, receipts for deposits, unpaid bills and other papers or documents relating to the Arena and/or this Agreement; and

(d)     For a reasonable period of time after the effective date of such designation (or such termination), make itself available to consult with and advise the City, the

Team, the Retail/Residential Developer, the Entertainment Developer and the Replacement Arena Manager regarding the operation, management and maintenance of the Arena.

14.11.3 <u>Agreements to be Assumed by Replacement Arena Manager</u>. The City, the Team, the Retail/Residential Developer and the Entertainment Developer shall take such actions as are required to cause the Replacement Arena Manager to succeed to all rights, and assume all contractual obligations, of the Arena Manager under this Agreement, all Licenses and all other contracts or agreements entered into by the Arena Manager pursuant to this Agreement (collectively, the "**Assumed Agreements**") other than contracts and agreements not required to provide for assignment and transfer in accordance with Section 5.26.2.

## ARTICLE 15

## INDEMNIFICATION

15.1 <u>Arena Manager Indemnifications</u>.

15.1.1 <u>City</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the City or any of its agents, employees, officials or other representatives; (ii) any failure by the City to make any advance or payment required to be made by the City under this Agreement; and/or (iii) any Event of Default by the Arena Manager (for which the City shall have the remedies described in Section 14.4.2), and subject to Section 10.4, the Arena Manager shall defend, indemnify and hold the City and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the Arena Manager's management, operation, use or occupancy of the Arena or any portion thereof. Any and all costs and expenses incurred by the Arena Manager to discharge its obligations under this Section 15.1.1 shall be included as Operating Expenses.

15.1.2 <u>Team</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Team or any of its agents, employees, officials or other representatives; (ii) any failure by the Team to make any advance or payment required to be made by the Team under this Agreement; and/or (iii) any Event of Default by the Arena Manager (for which the Team shall have the remedies described in Section 14.2.2), and subject to Section 10.4, the Arena Manager shall defend, indemnify and hold the Team and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates the Arena Manager's management, operation, use or occupancy of the Arena or any part thereof at any time during which (x) the Team does not control the Arena Manager, or (y) the Team and the Arena Manager are not controlled by the same Person. For purposes of the preceding sentence, a Person shall be deemed to control another Person if the first Person possesses, directly or indirectly, the power to direct, or cause the direction of, the management and policies of the second Person, whether through the ownership of voting securities, common directors, trustees or officers, by contract or otherwise. Any and all costs and expenses incurred by the Arena Manager to discharge its obligations under this Section 15.1.2 shall be included as Operating Expenses.

15.1.3 <u>Retail/Residential Developer</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Retail/Residential Developer or any of its agents,

employees, officials or other representatives; (ii) any failure by the Retail/Residential Developer to make any advance or payment required to be made by the Retail/Residential Developer under this Agreement; and/or (iii) any Event of Default by the Arena Manager (for which the Retail/Residential Developer shall have the remedies described in Section 14.5.3), and subject to Section 10.4, the Arena Manager shall defend, indemnify and hold the Retail/Residential Developer and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates the Arena Manager's management, operation, use or occupancy of the Arena or any part thereof. Any and all costs and expenses incurred by the Arena Manager to discharge its obligations under this Section 15.1.3 shall be included as Operating Expenses.

15.1.4 <u>Entertainment Developer</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Entertainment Developer or any of its agents, employees, officials or other representatives; (ii) any failure by the Entertainment Developer to make any advance or payment required to be made by the Entertainment Developer under this Agreement; and/or (iii) any Event of Default by the Arena Manager (for which the Entertainment Developer shall have the remedies described in Section 14.6.3), and subject to Section 10.4, the Arena Manager shall defend, indemnify and hold the Entertainment Developer and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates the Arena Manager's management, operation, use or occupancy of the Arena or any part thereof. Any and all costs and expenses incurred by the Arena Manager to discharge its obligations under this Section 15.1.4 shall be included as Operating Expenses.

15.2 <u>Team Indemnifications</u>.

15.2.1 <u>City</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the City or any of its agents, employees, officials or other representatives; (ii) any failure by the City to make any advance or payment required to be made by the City under this Agreement; and/or (iii) any Event of Default by the Team (for which the City shall have the remedies described in Sections 14.4.1 and 14.7), and subject to Section 10.4, the Team shall defend, indemnify and hold the City and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the Team's use or occupancy of the Arena or any portion thereof.

15.2.2 <u>Arena Manager</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Arena Manager or any of its agents, employees, officials or other representatives; (ii) any failure by the Arena Manager to make any advance or payment required to be made by the Arena Manager under this Agreement; and/or (iii) any Event of Default by the Team (for which the Arena Manager shall have the remedies described in Section 14.3.1), and subject to Section 10.4, the Team shall defend, indemnify and hold the Arena Manager and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the Team's use or occupancy of the Arena or any portion thereof.

15.2.3 <u>Retail/Residential Developer</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Retail/Residential Developer or any of its agents, employees, officials or other representatives; (ii) any failure by the Retail/Residential Developer

to make any advance or payment required to be made by the Retail/Residential Developer under this Agreement; and/or (iii) any Event of Default by the Team (for which the Retail/Residential Developer shall have the remedies described in Section 14.5.1), and subject to Section 10.4, the Team shall defend, indemnify and hold the Retail/Residential Developer and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the Team's use or occupancy of the Arena or any portion thereof.

15.2.4 <u>Entertainment Developer</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Entertainment Developer or any of its agents, employees, officials or other representatives; (ii) any failure by the Entertainment Developer to make any advance or payment required to be made by the Entertainment Developer under this Agreement; and/or (iii) any Event of Default by the Team (for which the Entertainment Developer shall have the remedies described in Section 14.6.1), and subject to Section 10.4, the Team shall defend, indemnify and hold the Entertainment Developer and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the Team's use or occupancy of the Arena or any portion thereof.

15.3 <u>City Indemnifications</u>.

15.3.1 <u>Arena Manager</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Arena Manager or any of its agents, employees, officials or other representatives; and (ii) any failure by the Arena Manager to make any advance or payment required to be made by the Arena Manager under this Agreement; and/or (iii) any Event of Default by the City (for which the Arena Manager shall have the remedies described in Section 14.3.2), and subject to Section 10.4, the City shall defend, indemnify and hold the Arena Manager and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the City's use or occupancy of the Arena or any part thereof, including any Community Event, City Revenue Event or City Sponsored Event.

15.3.2 <u>Team</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Team or any of its agents, employees, officials or other representatives; (ii) the failure of the Team to make any advance required to be made by the Team under this Agreement; and/or (iii) any Event of Default by the City (for which the Team shall have the remedies described in Section 14.2.1), and subject to Section 10.4, the City shall defend, indemnify and hold the Team and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the City's use or occupancy of the Arena or any portion thereof, including any Community Event, City Revenue Event or City Sponsored Event.

15.3.3 <u>Retail/Residential Developer</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Retail/Residential Developer or any of its agents, employees, officials or other representatives; (ii) the failure of the Retail/Residential Developer to make any advance required to be made by the Retail/Residential Developer under this Agreement; and/or (iii) any Event of Default by the City (for which the Retail/Residential Developer shall have the remedies described in Section 14.5.2), and subject to Section 10.4, the City shall defend, indemnify and hold the Retail/Residential Developer and its agents,

employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the City's use or occupancy of the Arena or any portion thereof, including any Community Event, City Revenue Event or City Sponsored Event.

15.3.4 <u>Entertainment Developer</u>. Except to the extent attributable to (i) the negligence or willful misconduct of the Entertainment Developer or any of its agents, employees, officials or other representatives; (ii) the failure of the Entertainment Developer to make any advance required to be made by the Entertainment Developer under this Agreement; and/or (iii) any Event of Default by the City (for which the Entertainment Developer shall have the remedies described in Section 14.6.2), and subject to Section 10.4, the City shall defend, indemnify and hold the Entertainment Developer and its agents, employees, officials and other representatives harmless for, from and against any Claim or Loss that arises from or relates to the City's use or occupancy of the Arena or any portion thereof, including any Community Event, City Revenue Event or City Sponsored Event.

## ARTICLE 16

## DISPUTE RESOLUTION

Except for disputes with respect to indemnification under Article 15 and disputes to be resolved pursuant to Sections 5.3.4 and/or 14.7, any Event of Default or any other dispute between or among the parties hereto under, in connection with or relating to this Agreement (each, an "**Arbitration Dispute**") shall be submitted to arbitration ("**Arbitration**") under this Article 16.

The parties hereto shall maintain a list (the "**Arbitrator List**") of five (5) or more individuals who the parties hereto have mutually agreed are qualified to resolve Arbitration Disputes. The individuals from time to time listed on the Arbitrator List shall be independent of each party hereto (and their respective Affiliates) and shall hold no financial interest in, or have any material financial or personal relationship with, any of the parties hereto (and their respective Affiliates). The initial Arbitrator List is attached to this Agreement as <u>Exhibit "G"</u>.

An individual shall remain on the Arbitrator List until removed by the consent of all of the parties hereto; provided that if any individual on the Arbitrator List dies, refuses to serve or for any other reason is unable to serve, the parties shall designate an additional individual to fill the vacancy on the Arbitrator List thereby created. An individual shall be added to the Arbitrator List only upon the consent of all of the parties hereto; provided that if a vacancy on the Arbitrator List is not filled within thirty (30) days after any party hereto gives the other parties hereto notice of the event that caused such vacancy, the remaining individuals on the Arbitrator List shall, upon request by any party hereto, choose an individual to fill such vacancy. If, at any time, there are three (3) or fewer individuals on the Arbitrator List and the parties hereto are unable to identify a sufficient number of additional individuals to increase the Arbitrator List to five (5) individuals, then, at the request of any party hereto, the selection of additional individuals sufficient to cause the Arbitrator List to include five (5) individuals shall be made by the regional vice president (or his/her equivalent) of the American Arbitration Association (the "**AAA**") with authority over Arizona.

The individual to be designated as the arbitrator (the "**Arbitrator**") for a given dispute shall be selected from the Arbitrator List by the consent of the parties hereto, or at the request of any party, by random selection from the Arbitrator List.

The Arbitration shall be conducted by the Arbitrator at a location in Maricopa County, Arizona selected by the Arbitrator. The Arbitration shall be conducted under the Arizona Arbitration Act, subject to this Agreement and any other documents executed by the parties hereto. The Arbitrator shall follow the commercial rules of the AAA, but shall have discretion to vary from such rules in light of the nature or circumstances of a given Arbitration Dispute; provided that the Arbitrator shall, in all events, be constrained by the provisions of this Article 16.

The parties shall make reasonable efforts to agree on discovery rules and the extent and scope of discovery with respect to any Arbitration Dispute. In the event the parties are not able to agree on such rules and the extent and the scope of such discovery, all issues relating to such discovery shall be resolved by the Arbitrator in his/her sole discretion. Unless waived by each of the parties participating in the Arbitration, the Arbitrator shall conduct an Arbitration hearing at which the participating parties and their respective counsel may be present and have the opportunity to present evidence and examine and cross-examine witnesses. Witnesses shall, unless waived by the parties, present testimony under oath.

If the Arbitrator determines that the matters or issues involved in any Arbitration Dispute are outside the scope of the Arbitrator's expertise, the Arbitrator shall have the right to retain and rely on experts with respect to such matters and issues. The cost of any expert retained by the Arbitrator shall be a cost of the Arbitration to be paid as directed by the Arbitrator. Any information obtained by the Arbitrator from an expert engaged by the Arbitrator shall be disclosed by the Arbitrator to the parties to such Arbitration Dispute, and each such party shall have the right to present evidence and/or testimony from such party's own expert with respect to such matter or issue.

The parties hereto shall cooperate in good faith to permit a conclusion of the Arbitration hearing within thirty (30) days following the submission of the Arbitration Dispute to the Arbitrator.

If the Arbitration results in a determination by the Arbitrator that an Event of Default has occurred, the provisions of Article 14, including the waivers of consequential and punitive damages and termination rights set forth therein, shall govern the damages and other remedies which may be implemented or ordered by the Arbitrator. Neither the requirement to utilize nor the pendency of any Arbitration shall in any way invalidate any notices or extend any cure periods applicable to an Event of Default as provided in Article 14.

Except for disputes with respect to indemnification under Article 15 and disputes to be resolved pursuant to Sections 5.3.4 and/or 14.7, the parties hereto shall use Arbitration exclusively, rather than litigation, as a means of resolving all disputes under this Agreement. Notwithstanding any other provision of this Article 16 to the contrary, in the event any party hereto desires to seek interim equitable relief with respect to an Arbitration Dispute in the form of a temporary restraining order, preliminary injunction or other interim equitable relief concerning an Arbitration Dispute, including specific performance, provisional remedies, stay of proceedings in connection with special action relief or any similar relief of an interim nature, either before the

beginning of, or at any point in, the Arbitration concerning such Arbitration Dispute, such party may initiate the appropriate litigation to obtain such interim equitable relief ("**Equitable Litigation**"). Nothing herein shall be construed to suspend or terminate the obligation of any party hereto to promptly proceed with the Arbitration concerning the Arbitration Dispute that is the subject of such Equitable Litigation while such Equitable Litigation (and any appeal therefrom) is pending. Regardless of whether such interim relief is granted or denied, or whether such Equitable Litigation is pending or any appeal is taken from the grant or denial of such relief, the parties shall at all times diligently proceed to complete the Arbitration. Any interim relief granted in such Equitable Litigation, or any appeal therefrom, shall remain in effect until, and only until, the Arbitration concerning the Arbitration Dispute that is the subject of such Equitable Litigation results in a settlement agreement or the issuance of an award following Arbitration.

Such written settlement agreement or award shall be the binding, final determination on the merits of the Arbitration Dispute (including any equitable relief but excluding any award of attorneys' fees or costs awarded or granted in the Equitable Litigation), shall supersede and nullify any decision in the Equitable Litigation on the merits of the Arbitration Dispute, and shall preclude any subsequent litigation on such merits, notwithstanding any determination to the contrary in connection with any Equitable Litigation granting or denying interim relief or any appeal therefrom. The parties agree that any disputes which arise out of such a written settlement agreement or award shall be resolved exclusively by Arbitration pursuant to this Article 16, provided that any party may institute legal proceedings in a court of competent jurisdiction to enforce judgment upon an Arbitration award in accordance with Applicable Law. The fees and costs of the Arbitrator shall be borne as directed by the Arbitrator; provided, however, that the prevailing party(ies) in any Arbitration shall be entitled to reimbursement for any costs of such proceeding, reasonable attorneys' fees, reasonable costs of investigation and any other expenses incurred in connection with such Arbitration in the manner directed by the Arbitrator.

## ARTICLE 17

## ASSIGNMENT

17.1     <u>Arena Manager Assignment</u>.  The Arena Manager shall not transfer or attempt to transfer the Arena Manager's duties and obligations under this Agreement, without the prior consent of each of the City, the Team, the Retail/Residential Developer and the Entertainment Developer, and any such transfer or attempted transfer to which the City, the Team, the Retail/Residential Developer or the Entertainment does not consent pursuant to this Section 17.1 shall be void. Nothing in this Section 17.1 shall be construed or deemed to (i) limit or restrict the rights of the Arena Manager under Section 4.1 to delegate all or a portion of the Arena Manager's duties and responsibilities hereunder, or (ii) limit or restrict the Arena Manager's rights to assign, pledge or otherwise transfer the Arena Manager's rights to receive Management Fees (including to a lender pursuant to Section 18.2.5) without the consent of the City, the Team, the Retail/Residential Developer or the Entertainment Developer.

17.2    Team Assignment.

17.2.1 City Consent.

(a)    The Team shall have the right to assign, pledge and otherwise transfer the rights and obligations of the Team under this Agreement (in whole or in part), without the consent of the City, (i) to any Person so long as such assignment, pledge or transfer is approved by the NHL or permitted by the Hockey Rules, and (ii) to any lender pursuant to Section 18.1.5. The Team shall give the City and the Arena Manager notice of the submission of any request for the NHL's approval of any such assignment, pledge or transfer promptly after the Team acquires knowledge of such submission, which notice shall include the name of the proposed transferee.

Immediately upon any such transfer becoming effective, the transferor and the transferee of the Team's obligations under this Agreement shall execute an assignment and assumption agreement evidencing such transferee's assumption of such obligations in such form and content as is reasonably acceptable to the City and the Team. Upon the execution of such assignment and assumption agreement, the transferor under such agreement shall, without further action, be released from all liabilities and obligations thereafter arising under this Agreement.

Any other transfer of the rights and obligations of the Team under this Agreement shall require the prior consent of the City, and any such transfer or attempted transfer to which the City does not consent shall be void.

(b)    Any owner of an equity interest in the Team shall have the right to assign, pledge and otherwise transfer such equity interest to any Person, without the consent of the City, so long as such assignment, pledge or transfer is approved by the NHL or permitted by the Hockey Rules.

17.2.2 Arena Manager, Retail/Residential Developer and Entertainment Developer Consent Not Required. The Team shall have the right to assign, pledge and otherwise transfer the rights and obligations of the Team under this Agreement to any Person, and any owner of an equity interest in the Team shall have the right to assign, pledge and otherwise transfer such equity interest to any Person, in each case without the consent of the Arena Manager, the Retail/Residential Developer or the Entertainment Developer.

17.3    City Assignment. The City acknowledges that the continuous ownership by the City of fee title to the Arena is of particular concern to the other parties hereto in view of the importance of the availability of the Arena for the purposes contemplated hereby, and the commitments of the other parties hereto to the Arena pursuant to this Agreement. Accordingly, except (a) pursuant to the rights of first refusal reserved by the Entertainment Developer in the Arena Facility Land Deed and the Parking Land Deed, (b) pursuant to Section 4.6 of the Mixed-Use Development Agreement, (c) pursuant to Section 18.3, and (d) pursuant to a transfer to another Arizona municipal corporation, the City shall not transfer or attempt to transfer all or any portion of the Arena, or the City's rights and obligations under this Agreement, without the prior consent of each of the Team and the Arena Manager, and any such transfer or attempted transfer without such consent shall be void.

17.4    Retail/Residential Developer Assignment.  The Retail/Residential Developer shall not transfer or attempt to transfer the Retail/Residential Developer's duties and obligations under this Agreement, without the prior consent of each of the City, the Team and the Arena Manager, and any such transfer or attempted transfer to which the City, the Team or the Arena Manager do not consent pursuant to this Section 17.4 shall be void.

17.5    Entertainment Developer Assignment.  The Entertainment Developer shall not transfer or attempt to transfer the Entertainment Developer's duties and obligations under this Agreement, without the prior consent of each of the City, the Team and the Arena Manager, and any such transfer or attempted transfer to which the City, the Team or the Arena Manager do not consent pursuant to this Section 17.5 shall be void.

## ARTICLE 18

## LENDER'S PROTECTION

18.1    Team Lender's Protection.

18.1.1  City Estoppel Certificates for Team.  The City shall from time to time, within fifteen (15) Business Days after receipt from the Team of a request therefor, deliver to the Team (or to such other party as the Team may designate in such request, including any lender providing or considering providing financing to the Team), a certificate, signed by the City Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the City Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Team and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Team may reasonably request in such request.  The Team may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.1.2  Arena Manager Estoppel Certificates for Team.  The Arena Manager shall from time to time, within fifteen (15) Business Days after receipt from the Team of a request therefor, deliver to the Team (or to such other party as the Team may designate in such request, including any lender providing or considering providing financing to the Team), a certificate, signed by the Arena Manager Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the Arena Manager Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Team and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Team may reasonably request in such request.  The Team may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.1.3  Retail/Residential Developer Estoppel Certificates for Team.   The Retail/Residential Developer shall from time to time, within fifteen (15) Business Days after

receipt from the Team of a request therefor, deliver to the Team (or to such other party as the Team may designate in such request, including any lender providing or considering providing financing to the Team), a certificate, signed by the Retail/Residential Developer Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the Retail/Residential Developer Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Team and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Team may reasonably request in such request. The Team may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.1.4 <u>Entertainment Developer Estoppel Certificates for Team</u>. The Entertainment Developer shall from time to time, within fifteen (15) Business Days after receipt from the Team of a request therefor, deliver to the Team (or to such other party as the Team may designate in such request, including any lender providing or considering providing financing to the Team), a certificate, signed by the Entertainment Developer Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the Entertainment Developer Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Team and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Team may reasonably request in such request. The Team may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.1.5 <u>Assignment of Team Rights</u>. The Team shall have the right, without any additional consent or approval of the other parties hereto, to assign to any lender providing financing to the Team, as security for such financing, the rights of the Team under this Agreement, provided that the NHL has approved or consented to such assignment. The Team shall, not later than thirty (30) days after such assignment becomes effective, give the other parties hereto notice (the "**Notice of Team Assignment**") of such assignment, and the Notice of Team Assignment shall include the name and address of the assignee (the "**Team Assignee**"). Each of the other parties hereto agrees to, upon request therefor from the Team and/or the Team Assignee, deliver to the Team Assignee an acknowledgement, executed by the City Representative, the Arena Manager Representative, the Retail/Residential Developer Representative or the Entertainment Developer Representative (as applicable), of receipt of a given Notice of Team Assignment. Nothing in this Section 18.1.5 shall alter, amend, reduce or excuse the Team from performing the Team's obligations under this Agreement.

Following receipt of a Notice of Team Assignment, none of the City, the Arena Manager, the Retail/Residential Developer or the Entertainment Developer shall enter into or consent to any amendment, modification or termination of this Agreement without the prior consent of the Team Assignee named in such Notice of Team Assignment.

The Team hereby authorizes and directs each of the other parties hereto, following such other party's receipt of (i) a Notice of Team Assignment; (ii) the Team Assignee's notice of a default

by the Team under the terms and conditions of the financing secured by the assignment described in such Notice of Team Assignment; and (iii) the Team Assignee's request for payment, to make any payments to be made by such other party to the Team under this Agreement directly to the Team Assignee. No such other party shall have any obligation to verify or investigate the existence of any claimed default described in the Team Assignee's notice.

18.1.6 <u>Notices to Team Assignee</u>. Following receipt from the Team of a Notice of Team Assignment, each of the other parties hereto shall, contemporaneously with giving any notice to the Team under this Agreement, send a copy of such notice to the Team Assignee named in such Notice of Team Assignment in the manner described in Section 19.6 and addressed to such Team Assignee at the address of such Team Assignee set forth in such Notice of Team Assignment.

18.1.7 <u>Team Assignee's Right to Cure Team Event of Default</u>. Following the receipt by a party hereto (other than the Team) from the Team of a Notice of Team Assignment, the Team Assignee named therein shall have the right, but not the obligation, to cure any Event of Default by the Team, whether then existing or thereafter arising. No such party shall exercise any remedy under this Agreement or otherwise with respect to any such Event of Default by the Team until at least sixty (60) days after such party has given such Team Assignee notice of such Event of Default and the Team Assignee's right to cure such Event of Default; provided, however, that if such Team Assignee commences such a cure within such sixty (60) day period, such party shall not exercise any such remedy with respect to such Event of Default so long as such Team Assignee is diligently pursuing such cure.

If a Team Assignee succeeds to the interest of the Team under this Agreement, such Team Assignee shall not be (i) bound by any amendment, modification or termination of this Agreement (entered into after the date on which the Notice of Team Assignment was given) made without such Team Assignee's written consent, or (ii) bound by, or liable for the cure of, any failure by the Team to perform any obligation under this Agreement that arose prior to the date on which such Team Assignee succeeded to the interest of the Team under this Agreement.

18.2 <u>Arena Manager Lender's Protection</u>.

18.2.1 <u>City Estoppel Certificates for Arena Manager</u>. The City shall from time to time, within fifteen (15) Business Days after receipt from the Arena Manager of a request therefor, deliver to the Arena Manager (or to such other party as the Arena Manager may designate in such request, including any lender providing or considering providing financing to the Arena Manager), a certificate, signed by the City Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the City Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Arena Manager and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Arena Manager may reasonably request in such request. The Arena Manager may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.2.2 <u>Team Estoppel Certificates for Arena Manager</u>. The Team shall from time to time, within fifteen (15) Business Days after receipt from the Arena Manager of a request therefor, deliver to the Arena Manager (or to such other party as the Arena Manager may designate in such request, including any lender providing or considering providing financing to the Arena Manager), a certificate, signed by the Team Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the Team Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Arena Manager and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Arena Manager may reasonably request in such request. The Arena Manager may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.2.3 <u>Retail/Residential Developer Estoppel Certificates for Arena Manager</u>. The Retail/Residential Developer shall from time to time, within fifteen (15) Business Days after receipt from the Arena Manager of a request therefor, deliver to the Arena Manager (or to such other party as the Arena Manager may designate in such request, including any lender providing or considering providing financing to the Arena Manager), a certificate, signed by the Retail/Residential Developer Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the Retail/Residential Developer Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Arena Manager and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Arena Manager may reasonably request in such request. The Arena Manager may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.2.4 <u>Entertainment Developer Estoppel Certificates for Arena Manager</u>. The Entertainment Developer shall from time to time, within fifteen (15) Business Days after receipt from the Arena Manager of a request therefor, deliver to the Arena Manager (or to such other party as the Arena Manager may designate in such request, including any lender providing or considering providing financing to the Arena Manager), a certificate, signed by the Entertainment Developer Representative stating, as of the date of such certificate: (i) whether this Agreement is in full force and effect; (ii) whether this Agreement has been amended and, if so, the date and substance of each such amendment; (iii) whether, to the Entertainment Developer Representative's knowledge after reasonable inquiry, there exists (or with the passage of time and/or the giving of notice there will exist) any Event of Default by the Arena Manager and, if so, the nature of such Event of Default; and (iv) such other information pertaining to this Agreement and then available to the public as the Arena Manager may reasonably request in such request. The Arena Manager may give any such certificate to, and any such certificate may be relied upon by, the Person to whom it is addressed.

18.2.5 <u>Assignment of Arena Manager Rights</u>. The Arena Manager shall have the right, without any additional consent or approval of the other parties hereto, to assign to any lender providing financing to the Arena Manager, as security for such financing, the rights of the

Arena Manager to receive Management Fees under this Agreement. The Arena Manager shall, not later than thirty (30) days after such assignment becomes effective, give the other parties hereto notice (the "**Notice of Arena Manager Assignment**") of such assignment, and the Notice of Arena Manager Assignment shall include the name and address of the assignee (the "**Arena Manager Assignee**"). Each of the other parties hereto agrees to, upon request therefor from the Arena Manager and/or the Arena Manager Assignee, deliver to the Arena Manager Assignee an acknowledgement, executed by the City Representative, the Team Representative, the Retail/Residential Developer Representative or the Entertainment Developer Representative (as applicable), of receipt of a given Notice of Arena Manager Assignment. Nothing in this Section 18.2.5 shall alter, amend, reduce or excuse the Arena Manager from performing the Arena Manager's obligations under this Agreement.

Following receipt of a Notice of Arena Manager Assignment, none of the City, the Team, the Retail/Residential Developer or the Entertainment Developer shall enter into or consent to any amendment, modification or termination of this Agreement without the prior consent of the Arena Manager Assignee named in such Notice of Arena Manager Assignment.

The Arena Manager hereby authorizes and directs each of the other parties hereto, following such other party's receipt of (i) a Notice of Arena Manager Assignment; (ii) the Arena Manager Assignee's notice of a default by the Arena Manager under the terms and conditions of the financing secured by the assignment described in such Notice of Arena Manager Assignment; and (iii) the Arena Manager Assignee's request for payment, to make any payments to be made by such other party to the Arena Manager under this Agreement directly to the Arena Manager Assignee. None of the City, the Team, the Retail/Residential Developer or the Entertainment Developer shall have any obligation to verify or investigate the existence of any claimed default described in the Arena Manager Assignee's notice.

18.2.6 <u>Notices to Arena Manager Assignee</u>. Following receipt from the Arena Manager of a Notice of Arena Manager Assignment, each of the other parties hereto shall, contemporaneously with giving any notice to the Arena Manager under this Agreement, send a copy of such notice to the Arena Manager Assignee named in such Notice of Arena Manager Assignment in the manner described in Section 19.6 and addressed to such Arena Manager Assignee at the address of such Arena Manager Assignee set forth in such Notice of Arena Manager Assignment.

18.2.7 <u>Arena Manager Assignee's Right to Cure Arena Manager Event of Default</u>. Following the receipt by a party hereto (other than the Arena Manager) from the Arena Manager of a Notice of Arena Manager Assignment, the Arena Manager Assignee named therein shall have the right to cure any Event of Default by the Arena Manager, whether then existing or thereafter arising. None of the City, the Team, the Retail/Residential Developer or the Entertainment Developer shall exercise any remedy under this Agreement or otherwise with respect to any such Event of Default by the Arena Manager until at least sixty (60) days after such party has given such Arena Manager Assignee notice of such Event of Default and the Arena Manager Assignee's right to cure such Event of Default; provided, however, that if such Arena Manager Assignee commences such a cure within such sixty (60) day period, such party shall not exercise any such remedy with respect to such Event of Default so long as such Arena Manager Assignee is diligently pursuing such cure.

If an Arena Manager Assignee succeeds to the interest of the Arena Manager under this Agreement, such Arena Manager Assignee shall not be (i) bound by any amendment, modification or termination of this Agreement (entered into after the date on which the Notice of Arena Manager Assignment was given) made without such Arena Manager Assignee's consent, or (ii) bound by, or liable for the cure of, any failure by the Arena Manager to perform any obligation under this Agreement that arose prior to the date on which such Arena Manager Assignee succeeded to the interest of the Arena Manager under this Agreement.

18.3    Subordination to City Encumbrance.  The rights of each of the Arena Manager, the Team, the Retail/Residential Developer and the Entertainment Developer under this Agreement shall, at the City's option, be subordinate to any ground or other lease, mortgage, deed of trust or other hypothecation for security (each, a "**City Encumbrance**") now or hereafter placed on all or any portion of the City's interest in the Arena, and to any all advances thereunder and all renewals, modifications, consolidations, replacements and extensions thereof. Such subordination shall be effective only if the holder of the City Encumbrance agrees, by written subordination, non-disturbance and attornment agreement in form and with substance reasonably satisfactory to the Arena Manager, the Team, the Retail/Residential Developer and the Entertainment Developer, to be bound by this Agreement and to recognize and not disturb the rights of the Arena Manager, the Team, the Retail/Residential Developer or the Entertainment Developer (or the rights of other users of the Arena) under this Agreement. The Team, the Arena Manager, the Retail/Residential Developer and the Entertainment Developer shall, within a reasonable time after the City's request therefor, execute any agreement reasonably required to implement or evidence the subordination of this Agreement in the manner described in this Section 18.3.

If the holder of any City Encumbrance desires that this Agreement have priority over the lien of such City Encumbrance, such holder shall give notice of such priority to the Arena Manager, the Team, the Retail/Residential Developer and the Entertainment Developer, and this Agreement shall thereafter be deemed to have priority over such lien.

## ARTICLE 19

## MISCELLANEOUS

19.1    Amendment; Waiver.  No alteration, amendment or modification hereof shall be valid unless evidenced by a written instrument executed by the parties hereto with the same formality as this Agreement; provided, however, that the City and the Team may alter, amend or modify this Agreement by a written instrument executed by them and delivered to the Arena Manager, the Retail/Residential Developer and the Entertainment Developer if such alteration, amendment or modification does not materially and adversely affect the Arena Manager, the Retail/Residential Developer or the Entertainment Developer. The failure of any party hereto to insist in any one or more instances upon the strict performance of any of the covenants, agreements, terms, provisions or conditions of this Agreement, or to exercise any election or option herein contained, shall not be construed as a waiver or relinquishment for the future of such covenant, agreement, term, provision, condition, election or option, but the same shall continue and remain in full force and effect. No waiver by any party hereto of any covenant, agreement, term, provision or condition of this Agreement shall be deemed to have been made

unless expressed in writing and signed by an appropriate official or officer on behalf of such party.

19.2 <u>Consent</u>. Unless otherwise specifically provided herein, no consent or approval by any party hereto permitted or required under the terms of this Agreement shall be valid unless the same shall be in writing, signed by the party by or on whose behalf such consent or approval is given.

Whenever in this Agreement the consent or approval of any party hereto is required, unless expressly stated to the contrary (*e.g.,* by phrases such as "sole discretion"), the granting of such consent or approval shall be governed by a standard of reasonableness. If any party hereto contends that such standard has not been met, the matter shall be resolved pursuant to Arbitration. In the event that such Arbitration results in a determination that such standard has not been met, the failure to meet such standard shall not constitute a default under this Agreement, operate to terminate this Agreement or give rise to any right to damages as a result thereof, and the sole remedy for such failure shall be the right to specific performance of the reasonableness standard (including the recovery of the Arbitrators' fees and costs and reasonable attorneys' fees and costs in such Arbitration in the manner described in Article 16).

19.3 <u>Severability</u>. If any article, section, subsection, term or provision of this Agreement, or the application thereof to any party or circumstance, shall, to any extent, be invalid or unenforceable, the remainder of the article, section, subsection, term or provision of this Agreement, or the application of the same to parties or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each remaining article, section, subsection, term or provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

19.4 <u>Binding Effect</u>. Except as may otherwise be provided herein to the contrary, this Agreement and each of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto, and their respective permitted successors and assigns.

19.5 <u>Relationship of Parties</u>. No partnership or joint venture is established between or among the parties hereto under this Agreement, or any other agreement referred to in this Agreement. None of the Team, the Arena Manager, the Retail/Residential Developer or the Entertainment Developer nor any of their respective Affiliates, employees, agents, contractors or guests shall be considered agents or employees of the City or to have been authorized to incur any expense on behalf of the City or to act for or to bind the City.

19.6 <u>Notices</u>. All notices, demands, disclosures, acknowledgments, consents, approvals, statements, requests, responses and invoices to be given under this Agreement shall be in writing, signed by the party or officer, agent or attorney of the party giving such notice, demand, disclosure, acknowledgment, consent, approval, statement, request, response and/or invoice, and shall be deemed effective (i) upon receipt if hand delivered or sent by telecopy or overnight courier service; or (ii) upon delivery or the date of refusal if sent by the United States mail, postage prepaid, certified mail, return receipt requested, in either case addressed as follows:

To the Arena Manager:      Steven Ellman
                                  Arena Management Group, LLC
                                  4040 East Camelback Road, Suite 250
                                  Phoenix, Arizona 85018
                                  Facsimile No. (602) 840-8101

with copy to:            Robert P. Kaufman
            General Counsel
            Arena Management Group, LLC
            4040 East Camelback Road, Suite 250
            Phoenix, Arizona 85018
            Facsimile No. (602) 840-8101

To the City:            City Manager
            City of Glendale
            5850 West Glendale Avenue
            Glendale, Arizona 85301
            Facsimile No. (623) 847-1399

with copy to:            City Attorney
            City of Glendale
            5850 West Glendale Avenue
            Glendale, Arizona 85301
            Facsimile No. (623) 915-2391

To the Team:            Steven Ellman
            Coyotes Hockey, LLC
            4040 East Camelback Road, Suite 250
            Phoenix, Arizona 85018
            Facsimile No. (602) 840-8101

with copy to:            Robert P. Kaufman
            General Counsel
            Coyotes Hockey, LLC
            4040 East Camelback Road, Suite 250
            Phoenix, Arizona 85018
            Facsimile No. (602) 840-8101

|                              |                              |
|------------------------------|------------------------------|
| To the Retail/Residential Developer: | Steven Ellman<br>Glendale-101 Development, LLC<br>4040 East Camelback Road, Suite 250<br>Phoenix, Arizona 85018<br>Facsimile No. (602) 840-8101 |
| with copy to:                | Robert P. Kaufman<br>General Counsel<br>Glendale-101 Development, LLC<br>4040 East Camelback Road, Suite 250<br>Phoenix, Arizona 85018<br>Facsimile No. (602) 840-8101 |
| To the Entertainment Developer: | Steven Ellman<br>Coyote Center Development, LLC<br>4040 East Camelback Road, Suite 250<br>Phoenix, Arizona 85018<br>Facsimile No. (602) 840-8101 |
| with copy to:                | Robert P. Kaufman<br>General Counsel<br>Coyote Center Development, LLC<br>4040 East Camelback Road, Suite 250<br>Phoenix, Arizona 85018<br>Facsimile No. (602) 840-8101 |

Any party hereto may from time to time, by notice given to the other parties pursuant to the terms of this Section 19.6, change the address to which notices, demands, disclosures, acknowledgments, consents, approvals, statements, requests, responses and invoices to such party are to be sent or designate one or more additional Persons to whom notices, demands, disclosures, acknowledgments, consents, approvals, statements, requests, responses and invoices are to be sent.

A party giving a notice, demand, disclosure, acknowledgment, consent, approval, statement, request, response or invoice under this Agreement shall, contemporaneously with the giving of the same, give a copy of such notice, demand, disclosure, acknowledgment, consent, approval, statement, request, response or invoice to each party hereto that is not a named recipient thereof.

19.7    <u>Applicable Law</u>.  This Agreement has been prepared in the State of Arizona and shall be governed in all respects by the laws of the State of Arizona.

19.8  Time is of the Essence.  Time is of the essence of this Agreement and every term or performance hereunder.

19.9  Antidiscrimination Clause.  The Arena Manager, the Team, the Retail/Residential Developer and the Entertainment Developer shall comply with all applicable state, local and federal laws, rules, regulations, executive orders and agreements pertaining to discrimination in employment and unlawful employment practices.

19.10  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

19.11  Entire Agreement; Conflict.  This Agreement and the Related Agreements supersede any prior understanding or written or oral agreements between the parties hereto respecting the within subject matter, except for Section 9 of the MOA, and contains the entire understanding among the parties with respect thereto.  In the event of any conflict between any provision in the Recitals to this Agreement and any provision in any Article of this Agreement, the provision in the Article shall govern.

19.12  Conflicts of Interest.  Each member, official, representative and employee of the City shall, at all times while this Agreement is in effect, be bound by all applicable laws pertaining to conflicts of interest, and, to the extent prohibited by such laws, not have any personal interest, direct or indirect, in this Agreement or participate in any decision relating to this Agreement that relates to his or her personal interest or the interest of any entity in which he or she is, directly or indirectly, interested.

A.R.S. §38-511 provides political subdivisions of the State of Arizona, including the City, with the right to cancel contracts under certain circumstances.  The parties hereto acknowledge that the provisions of A.R.S. §38-511, which are hereby incorporated in this Agreement by this reference, may create a situation in which the City might have a right to cancel this Agreement pursuant to A.R.S. §38-511.  None of the Arena Manager, the Team, the Retail/Residential Developer or the Entertainment Developer shall knowingly take any action that could create a right of cancellation under A.R.S. §38-511 with respect to this Agreement.

The parties hereto hereby agree to the following procedures with respect to A.R.S. §38-511, to the extent permitted by A.R.S. §38-511:

19.12.1  City Notice.  By separate notice to the other parties hereto given upon execution of this Agreement, the City shall provide to the other parties hereto the names of the persons significantly involved in initiating, negotiating, securing, drafting or creating this Agreement on behalf of the City;

19.12.2  Submission.  Each of the Arena Manager, the Team, the Retail/Residential Developer and the Entertainment Developer shall have the right to, from time to time during the three (3) years after the Home Game Obligation Effective Date, give notice to the City of the name of any person that the party giving such notice proposes to employ.  The City shall, within thirty (30) days after the City's receipt of such notice, deliver to the party giving such notice a certificate stating whether the person named in such notice was, for the